GEORGE F. RHODES, RESPONDENT, *v.* MARY A. CLUTE ET AL., APPELLANTS.

BUILDING CONTRACT—PLANS AND SPECIFICATIONS—MATERIAL DEPARTURES—LIABILITY OF OWNER THEREFOR.

Where the owner of premises and a builuer enter into a contract for the erection of a building at an agreed price therefor, and, after part performance by the builder, such material departures from the plans and specifications are made, at the instance of the owner, as will result in a new and different undertaking, without any agreement as to the price for such departures, the builder may recover for the reasonable value of the material and labor furnished in accordance with such

new undertaking, and will not be limited to the price agreed upon in the original contract.

(No. 936.   Decided June 24, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Action by George F. Rhodes against Mary A. Clute and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Varian & Varian,* for appellants.

*O. W. Moyle,* for respondent.

This was an action to foreclose a mechanic's lien on certain premises, to recover a balance of money which the plaintiff claims is due him from the defendants for labor and material furnished in the construction of the house on the premises. It appears from the evidence that in April, 1891, defendant Mary A. Clute, the then owner of the property, engaged the plaintiff, who was a carpenter and builder, to build a frame dwelling house at the agreed price of $3,800. The contract was verbal, and the house was to be built according to plans prepared by the owner. The contractor immediately commenced operations, but, before the foundation was finished, at the instance of the owner the plans were changed so as to put in a low bay window; and after the foundation was completed a change was made, at the instance of the owner, so as to erect a brick instead of a frame building. Thereafter the front porch was ordered to be made larger than indicated

on the plans, the deck roof changed to one with gables, stairway altered, and other material changes directed to be made. All of which alterations, according to plaintiff's testimony, were of the value of about $2,600; and the owner, up to the time suit was brought, paid on account of the building $5,484 94, but refused to pay the balance claimed by the contractor, and which is in controversy herein. On the occasion of making the change from a frame to a brick building, as testified to by the plaintiff, Mr. Clute, the agent of the owner, asked the plaintiff if it was too late to make a brick house in the place of a frame, and was informed that the foundation was not put in for a brick house, and that he must take the chances. Thereupon the agent ordered the change, and after the brick (common and pressed) had been selected, the plaintiff was directed to order "stone trimmings for the house and water table;" but nothing was said about compensation for labor, or price for the brick house with trimmings, or the cost of laying the brick or stone. It appears that at about that time Clute asked plaintiff what would be the best way to put up the building, and was told that, if he wanted good work, it would be best to hire men by the day, and that thereupon Clute replied, "Go ahead, and hire the men." Afterwards, being told, upon inquiry, that they were working non-union men, Clute asked plaintiff if it made any difference in price, and, on being informed that non-union men were the cheapest, said to plaintiff, "Go ahead with the force we had." The plaintiff kept the pay rolls, and the labor and most all the materials were paid for by him; he receiving the money from the owner. According to plaintiff's testimony, the last material was furnished and last labor performed on December 12, 1891; and he testified that his own labor amounted to about 180 days, and that he had

received nothing therefor. The notice of lien was filed February 9, 1892. At the trial the court rendered judg-ment in favor of the plaintiff in the sum of $441, and the defendants appealed.

BARTCH, J. (after stating the facts):

The principal and most important contention on the part of the appellants appears to be that the plaintiff was a contractor, and had agreed to erect the building for a stipulated sum, and that therefore he was neither entitled to charge for superintending his contract, nor for his own personal labor upon the building, and consequently was not entitled to a lien on the premises; and this regardless of the changes made in the building after the first con-tractual relations between him and the owner. If there was no abandonment of the contract because of the changes made in the plans for the building, this conten-tion is undoubtedly correct; for if, under an agreement, he was to furnish the material and labor and erect the house at an agreed price, then he was bound by the terms of the contract, and is neither entitled to compensation for superintending the work, nor for his own labor. But the respondent maintains that such was not the case, that the contract was abandoned by the parties, and that there-fore he was entitled to recover on a quantum meruit, and also entitled to a lien on the property. It will be noticed from the facts above stated that, in the first instance, there was a verbal contract between the parties for the construction of a frame dwelling house at the agreed price of $3,800. Such a house as was thus indicated by the plans and agreed upon, the plaintiff would have been bound to build for the stipulated sum; but was he re-quired to do more, and, at the mere suggestion of the owner, build a brick instead of a frame house? Surely,

as shown by the record, no brick house was included within the terms of the contract. Nothing of the kind appears to have been thought of until, after the contractor had entered upon the performance of the contract, and had completed the foundation for the frame building, the owner, of her own volition, without any agreement as to the price therefor, directed the building of a brick instead of a frame structure. Then other material changes were made in the designs of the building, all at the instance and under the directions and orders of the owner, until the contemplated comparatively unpretentious frame house was raised into a pretentious brick structure, costing several thousand dollars more than the one for which the contract had been made. How, then, with such facts disclosed by the evidence, can it successfully be maintained that the owner is not to be charged with what the construction of such a building is reasonably worth, or that the cost, as to him, must be governed by the terms of the original contract, although nothing was said concerning the price of the brick building when the changes were made? The acts of the owner herself negative such a contention, for it is clearly shown that she paid out large sums of money for material and labor, over and beyond the terms of the contract, and we cannot assume that the respondent undertook to erect a kind of building which was not in the minds of the parties at the time of their entering into the agreement. The changes and additions made did not merely amount to extras, but were so material, both in price and construction, as to amount to an abandonment of the contract, and the creation of a new one, without an agreed price for the erection of the structure under the altered plans. Where the owner of premises and a builder enter into a contract for the erection of a building, at an agreed price therefor, and, after part

performance by the builder, such material departures from the plans and specifications are made, at the instance of the owner, as will result in a new and different undertaking, without any agreement as to the price for such departures, the builder may recover for the reasonable value of the material and labor furnished in accordance with such new undertaking, and will not be limited to the price agreed upon in the original contract. *Cook Co. v. Harms*, 108 Ill. 151; *Smith v. Salt Lake City*, 83 Fed. 784; *Delafield v. Village of Westfield*, 77 Hun 124; *Bridge Co. v. McGrath*, 134 U. S. 260.

From the foregoing considerations, and in view of the facts in evidence, we are of the opinion that the respondent, although superintendent of the construction of the building, had the right to recover for the work actually performed by him, that he had a right to a lien therefor on the premises, and that his notice of lien filed sufficiently complied with the statute then in force. The questions raised respecting the lien in this case we do not think are well taken, under the facts disclosed by the record. Nor, owing to the conclusions reached above, do we deem a separate discussion of them, or of any other question presented, necessary. There appears to be no reversible error in the record. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.